# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0739
Filed July 8, 2026

————————————

**Dobol Rial Koat,**
Applicant–Appellant,

v.

**State of Iowa,**
Respondent–Appellee.

————————————

Appeal from the Iowa District Court for Pottawattamie County,
The Honorable Richard H. Davidson, Judge.

————————————

**AFFIRMED**

————————————

Matthew L. Noel of Noel Law Office, Dubuque, attorney for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney
General, attorneys for appellee.

————————————

Considered without oral argument
by Tabor, C.J., Langholz, J., and Vogel, S.J.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

Seeking relief from his murder conviction, Dobol Koat criticizes the performance of his criminal trial counsel. He alleges that his representation was faulty in two ways: (1) counsel did not object to the prosecutor's closing argument recounting Koat's lies to investigators and (2) counsel did not challenge the jury instruction on the victim's cause of death. The district court rejected those ineffective-assistance-of-counsel claims and denied postconviction relief. In our de novo review, we do the same.[1]

## I.     Facts and Prior Proceedings

A jury convicted Koat of first-degree murder in the stabbing death of his roommate William Dut. On direct appeal, Koat argued the State did not offer sufficient evidence to prove his identity as the killer. But the record contained ample evidence linking him to the killing.

On a Monday morning in late October 2019, passersby discovered Dut's body in an alley about one-half block from the studio apartment in Council Bluffs where he'd been living with Koat. At trial, the State advanced a theory that Koat killed Dut on Friday night, then left town for the weekend—missing his scheduled shifts at the plant where he worked. An investigation revealed extensive blood stains in Koat's apartment and Koat's DNA on the knotted sheet wrapping Dut's body.

Beyond that physical evidence, Koat offered inconsistent explanations to police as to his whereabouts. During closing arguments, the prosecutor

---

[1] In general, we review postconviction rulings to correct errors at law. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). But when, as here, an applicant alleges ineffective assistance of counsel—a constitutional challenge—we switch to de novo review. *Smith v. State*, 7 N.W.3d 723, 725 (Iowa 2024).

posed these rhetorical questions: "Why lie about it? Why not just say, hey, I don't know what's going on, I was in Marshalltown and Des Moines all weekend, right? Why lie?"

Finding "strong circumstantial evidence" of his guilt, we affirmed Koat's conviction. *State v. Koat*, No. 20-1162, 2021 WL 5458053, at *1 (Iowa Ct. App. Nov. 23, 2021). In upholding the jury's verdict, we noted, "Koat gave the police false and shifting stories about his activities that weekend." *Id.* at 6.

A few months after losing his direct appeal, Koat applied for postconviction relief, alleging ineffective assistance of counsel. He focused on these two omissions by his trial attorneys: (1) their failure to object to statements by the prosecutor during closing arguments and (2) their failure to object to a "badly flawed" jury instruction on causation. The district court was not persuaded that Koat received ineffective assistance.

On the alleged prosecutorial misconduct, the court found no duty to object to the prosecutor's reference to Koat's dishonesty:

> Koat argues that the county attorney's use of the term lie is prohibited by *State v. Graves*, 668 N.W.2d 860 (Iowa 2003). Koat's argument misses the mark. In *Graves*, the prosecutor during cross examination and again during final argument repeatedly accused the defendant of lying. *Id.* at 867–68. As the Court in *Graves* makes clear there is a significant distinction between a prosecutor's statements that were legitimate inferences from the evidence and those made as an expression of the prosecutor's personal opinion that the defendant was lying. *Id.* at 875. . . .
>
> . . . The prosecutor in this case drew an inference from the evidence.

On the jury instruction, the court acknowledged: "All agree that [the causation instruction] was inartfully drafted and that the stock instruction

would have been the preferred instruction. But the inartful instruction does not equate to ineffectiveness of counsel." As the court emphasized, the fight was not over causation: "Remember, this was not a case where there was a question of what caused Dut's death. The question before the jury was who killed Dut." Rejecting Koat's challenges to counsel's performance, the court denied his postconviction application.[2] Koat appeals.

## II.    Analysis

Koat contends trial counsel made two critical mistakes, leaving him without effective assistance of counsel as guaranteed by the Sixth Amendment. *See Smith*, 7 N.W.3d at 725. First, he believes counsel should have objected when the prosecutor suggested in closing argument that he lied. Second, Koat criticizes counsel for not objecting to a non-uniform instruction on causation.

To prove ineffective assistance, Koat must show by a preponderance of the evidence that (1) counsel ignored an essential duty, and (2) counsel's omission resulted in prejudice. *Id.* at 726. Failure to prove either prong defeats his claim, and we need not address the other. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

Under the performance prong, we presume attorneys carry out their duties competently. *Smith*, 7 N.W.3d at 726. To rebut this presumption, Koat must prove that trial counsel performed below the standard demanded of a reasonably competent practitioner. *See id.* On the prejudice prong, Koat must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 727 (citation

---

[2] Koat raised four other claims of ineffective assistance of counsel that he doesn't reprise on appeal.

omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). We take each of his claims in turn.

### A. Closing Argument

Koat contends that counsel should have objected during the State's closing argument when the prosecutor asked why Koat would lie to investigators. To determine whether the prosecutor's remarks were proper, we ask three questions:

> (1) Could one legitimately infer from the evidence that the defendant lied? (2) Were the prosecutor's statements that the defendant lied conveyed to the jury as the prosecutor's personal opinion of the defendant's credibility, or was such argument related to specific evidence that tended to show the defendant had been untruthful? and (3) Was the argument made in a professional manner, or did it unfairly disparage the defendant and tend to cause the jury to decide the case based on emotion rather than upon a dispassionate review of the evidence?

*Graves*, 668 N.W.2d at 874–75.

Koat contends these factors skew in his favor. Koat alleges that the State's closing argument—asking why Koat would lie about where he was the weekend of Dut's murder—was not tied to the evidence, reflected the prosecutor's opinion, and was "hardly a dispassionate recitation of the evidence." We disagree.

First, the record supported the prosecutor's closing argument. Koat told Detective Ron Branigan that he stayed in Council Bluffs on Friday and Saturday, taking the bus to Omaha on Sunday night.

> [But] [t]hrough later investigation, Detective Branigan established that Koat was lying about his actions that weekend. For instance, the bus schedule from Council Bluffs to Omaha conflicted with Koat's story.

> What's more, Koat's work records and banking transactions also contradicted his version of events. The detective could establish that Koat spent the weekend in Des Moines and Marshalltown.

*Koat*, 2021 WL 5458053, at *3.

Second, the prosecutor did not express his own view that Koat was untruthful. Rather, he discussed evidence that contradicted Koat's statements to the detective. "This argument was proper under the first and second *Graves* factors." *See State v. Carey*, 709 N.W.2d 547, 557 (Iowa 2006).

Third, the prosecutor's argument was professional and did not unfairly disparage Koat. Read in context, the prosecutor's rhetorical flourish was not aimed to inflame the passions of the jury. *See id*. Instead, "why lie" was a fair question for the jurors to ponder when deciding whether Koat committed the murder.

Because the prosecutor's argument did not violate *Graves*, defense counsel had no grounds to object. *See Schwebke v. State*, No. 07–1027, 2009 WL 605823, at *9–10 (Iowa Ct. App. Mar. 11, 2009). Koat's ineffective-assistance claim fails on the performance prong.

## B. Causation Instruction

Koat next claims that counsel was ineffective for not objecting to the causation instruction because "it was confusing to the jury."

To frame his issue, we first set out the marshalling instruction:

[T]he State must prove the following elements of Murder in the First Degree:

> 1. On or about the 25th day of October, 2019, the Defendant assaulted William Josephtong Dut.
>
> 2. William Josephtong Dut died as a result of being assaulted.

3. The Defendant acted with malice aforethought.

4. The Defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill William Josephtong Dut.

Expounding on the second element, the court provided this causation instruction: "If you find the Defendant assaulted William Josephtong Dut, did the assault result in the death of William Josephtong Dut, or did it cause or directly contribute to William Josephtong Dut's death." By comparison, the uniform jury instructions give this explanation of causation: "Concerning element number ____ of Instruction No. ____, the [wound inflicted] [wrongful act] by the defendant resulted in death of (victim), if it caused or directly contributed to (victim)'s death." Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 700.11. Koat contends that the variation from the stock instruction "left the jury to speculate" because it "widen[ed] the scope of what it means to die as a result of the Defendant's actions."

In response, the State concedes that the causation instruction was problematic because it was "partially phrased in the form of a question." But it rallies: "Grammar issues aside, the instructions *as a whole* still covered and explained that causation element." We agree with the State. Read as a whole, the jury instructions adequately informed the jury of the causation element. *See State v. Shawhan,* No. 16–0709, 2017 WL 6513522, at *8–9 (Iowa Ct. App. Dec. 20, 2017) (finding jury understood requirement of specific intent through plain language and alongside other jury instruction). And, as the district court noted, the cause of death was clear. According to his autopsy, Dut suffered twelve stab wounds to his face and head, including a neck wound that reached his spine. On this record, counsel did not breach a material duty by not objecting to the causation instruction.

**AFFIRMED.**